**SO ORDERED.**

**SIGNED this 9th day of October, 2012.**

THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE



---

**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| | |
|---|---|
| IN RE: ) | |
| CLEAN BURN FUELS, LLC, ) | Case No. 11-09046 |
| ) | |
| Debtor. ) | Chapter 7 |
| _____) | |
| ) | |
| CLEAN BURN FUELS, LLC, ) | |
| ) | |
| Plaintiff, ) | Adv. Pro. No. 11-80562 |
| ) | |
| v. ) | |
| ) | |
| PURDUE BIOENERGY, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Extend Scheduling Order Deadlines (the "Motion") filed by Sara Conti (the "Trustee"), as Chapter 7 trustee for the Debtor and plaintiff in the above-captioned adversary proceeding. On May 2, 2011, the Trustee initiated this adversary proceeding by filing a Complaint against Perdue Bioenergy, LLC ("Perdue"). On July 11, 2011, after several consensual extensions of the deadlines in the

1

original scheduling order, the Court issued an amended scheduling order setting a discovery deadline for August 27, 2012. Perdue objects to the extension of that deadline. Upon consideration of the Motion and the evidence and arguments presented at the hearings held on September 12, 2012 and October 2, 2012, and for the reasons that follow, the Court will grant the Motion.

### I. FACTS

On July 11, 2011, the Court entered a scheduling order approving October 31, 2011 as the deadline for discovery, November 21, 2011 as the dispositive motion deadline, and December 12, 2011 as the pre-trial disclosure deadline, as agreed upon by the parties in their scheduling memorandum. On August 31, 2011, the parties filed an amended scheduling memorandum, agreeing to January 19, 2012 as the discovery deadline, March 1, 2012 as the dispositive motion deadline, and March 21, 2012 as the pre-trial disclosure deadline. The Court approved the amended scheduling memorandum on September 2, 2011.

On December 9, 2011, the parties filed a consent motion to extend the scheduling order deadlines, setting March 5, 2012 as the discovery deadline, May 7, 2012 as the pre-trial disclosure deadline, and a 45-day extension of any other deadlines not specified in the motion. The Court granted the motion on December 12, 2011.

Again, on January 26, 2012, the parties filed a consent motion extending certain deadlines, which the Court granted on January 30, 2012.

On April 24, 2012, the parties filed yet another consent motion. The consent motion explained that the Debtor produced over 133,500 files that had not been

organized by either custodian or document request and some were not even searchable. Consequently, the parties sought a 75-day extension for deadlines not already extended in the First Amended Joint Scheduling Memorandum. The Court granted the consent motion on April 26, 2012.

On May 23, 2012, Perdue submitted a proposed Second Amended Scheduling Order, which the Court entered on May 24, 2012, setting deadlines of August 27, 2012 for discovery, October 8, 2012 for any dispositive motions, and October 29, 2012 for pre-trial disclosures.

On August 26, 2012, the Trustee filed the Motion that is before the Court, seeking to extend the deadlines for discovery to October 29, 2012, dispositive motions to November 19, 2012, and pre-trial disclosures to December 7, 2012.  Perdue did not file a written objection to the Motion.

On September 12, 2012, the Court held an expedited hearing on the Motion. At the hearing, the Trustee disclosed that Purdue had produced approximately 44,000 Bates-stamped documents. Purdue also responded to the Trustee's interrogatories by stating that the answers to the interrogatories were in the documents that had already been produced.  Specifically, Perdue's responses to the interrogatories provided: "see documents produced in response to discovery request [number]." The documents were produced by Perdue on a CD-ROM, which had 26 sub folders named after the individual that had custody or control of the documents.  Perdue did not indicate which documents responded to a particular document request.

The Trustee has since reviewed all the documents produced by Perdue. In the

Motion, the Trustee requests the opportunity to serve one last set of discovery so that certain documents produced by Perdue can be authenticated. She believes that she has found the answers to the interrogatories, and she seeks admissions that they are indeed the correct documents. The Trustee further requests authority to submit requests for admissions concerning various documents or spreadsheets produced by Perdue. The Trustee intends for this process to enable the parties to make stipulations that would allow the trial to proceed more smoothly. The Trustee correctly notes that the Federal Rules of Civil Procedure only allow the parties to propound 25 interrogatories absent court order or the consent of the parties. She believes that the last set of interrogatories served by Purdue exceeds the limit, but the Trustee would stipulate that each party could serve more than 25 interrogatories.

Purdue opposed the Trustee's request and explained that Purdue spent 377 hours collecting potentially responsive electronically stored information and employed a third party vendor to collect responsive documents, at a cost of almost $70,000. Perdue argues that the process has been burdensome, costly, and expensive to Purdue employees, and Perdue has been cooperative and responsive, despite substantial expenditures of time and money. Perdue asserts that the discovery requests in the Motion were only raised by the Trustee recently. Perdue objected to the interrogatories and document requests as overbroad, but still provided documents in response. Perdue opposes reopening discovery to allow the Trustee to conduct discovery outside of the discovery period.

At the conclusion of the September 12, 2012 hearing, the parties consented that the Trustee could complete the depositions of two Perdue employees by the end of

September and the deposition of Perdue's expert witness by the middle of October. The Court ordered Purdue to produce copies of loan documents and an unredacted copy of a produced document, subject to a confidentiality agreement. Perdue was ordered to either produce a sublease or to confirm that the sublease did not exist. The Court continued the hearing to October 2, 2012, setting a deadline of September 21 for Purdue to produce five bills of lading and any computer records regarding all bills of lading, and for the Trustee to submit her fifteen proposed discovery requests to the Court.[1]

At the continued hearing on October 2, 2012, the Trustee disclosed that Purdue produced the five bills of lading, but sent an email to the Trustee stating that Perdue was not able to print relevant computer records concerning the bills of lading. Following the depositions of the Purdue employees, the Trustee was able to identify Norfolk Southern Railway, a common carrier, as an alternate source for obtaining copies of the bills of lading. Although Norfolk Southern would not voluntarily produce the bills of lading, it indicated to the Trustee that it would respond to a subpoena requesting the documents. Consequently, the Trustee requested Court authorization to subpoena the records from Norfolk Southern and take a deposition of Norfolk Southern pursuant to Federal Rule of Civil Procedure 30(b)(6).

At the October 2, 2012 hearing, Perdue stated that it had located and copied all of the relevant bills of lading (totaling over 115) and that it intended to produce all of them

---

[1] The Trustee timely submitted 15 requests to admit, 15 interrogatories, and 11 requests to produce documents (the "Second Written Discovery Requests") for the Court's review, with a copy to Perdue.

once they had been Bates-stamped.[2] The Trustee requested to take a deposition of Perdue with regard to the bills of lading as well. Perdue objected to any additional discovery or depositions because these are not new matters. Perdue argued that the Trustee has had a "fair shot" at discovery and should not be allowed further discovery because it is costly and burdensome to Purdue. The Trustee responded that, to the extent that Perdue was willing to authenticate all of the bills of lading that it produced, the Rule 30(b)(6) deposition of Perdue might not be necessary. Perdue did not agree to authenticate the bills of lading.

The Trustee explained that she sent the Debtor's first discovery request in October 2011. That discovery request included 18 interrogatories and 21 document production requests. The Trustee received Purdue's responses in March and April of 2012. Perdue served its first discovery request in December 2011, including 18 interrogatories and 20 document production requests. On July 27, 2102, Perdue sent an additional 38 interrogatories, 38 requests for admissions, and 38 document production requests. The Trustee responded to Perdue's second discovery request except for the interrogatories; she did not answer the interrogatories because they exceeded the number allowed by the Federal Rules of Civil Procedure. The Trustee agreed to respond to Perdue's interrogatories if the Court allowed the additional written discovery requested by the Trustee, including her proposed interrogatories.

---

[2]On October 5, 2012, after the hearing, Perdue sent an e-mail to the Court, copying counsel for the Trustee, that corrected statements made by counsel for Perdue at the hearing. It stated that Perdue had been able to locate only 17 bills of lading, along with the boxes in which others might be found.

At the October 2, 2012 hearing, Perdue objected to the proposed interrogatories because they were proposed after the discovery period. Perdue then withdrew its interrogatories[3] and repeated its argument that no further discovery should be had. In addition, Purdue specifically objected to each of the Trustee's proposed interrogatories, as follows. First, Interrogatories 1 through 6 seek admissions of authenticity of attached documents that had been produced by Perdue in March and April. Perdue argues that the Trustee should not be allowed to take additional discovery on matters already known. Interrogatory 7 seeks admission of a written or oral lease, but Perdue maintains that the lease was Bates-stamped and provided to the Trustee along with the five bills of lading. Interrogatories 8 and 9 seek information about matters that were well known by the Trustee within the discovery period. Interrogatories 12 through 15 request an explanation of Perdue's legal theories, and Perdue asserts that this relates to work product and litigation strategy.

The Trustee also stated that some of the documents produced by Perdue were unreadable and indecipherable; however, at the hearing, she only identified Exhibit C. The Trustee argued that one of Perdue's employees revealed in a deposition that the documents could be reproduced in a legible form.

## II. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court

---

[3] "Based on the Trustee's response we are happy to withdraw our request for admissions. I think they are not productive for us. They were already answered so I don't know what effect that has. But as far as anything further relating to those requests it's just not productive for Perdue, not helpful, so we withdraw it." Hr'g 10:38:35-10:39:00; 10:34:26; 10:35:26.

for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (E), and (O), which this Court has the jurisdiction to hear and determine. Pursuant to the analysis in Stern v. Marshall, 564 U.S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

### III. LEGAL ANALYSIS

A. Interrogatories

"There are many purposes for interrogatories but the general aims are to expeditiously narrow the scope of litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter, avoid unnecessary discovery and minimize the expense." Trueman v. New York State Canal Corp., 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) (citing Moore's Federal Practice § 33.03 (3d ed. 2009)). To be adequate, an answer must completely and specifically respond to the interrogatory, without being evasive. In re Savitt/Adler Litig., 176 F.R.D. 44, 49 (N.D.N.Y. 1997). Courts have noted that "interrogatories are not only an information gathering tool, but also an opportunity to require one's opponent to state its position on an issue in controversy in writing and under oath." Covad Comm'cns Co. v. Revonet, Inc., 258 F.R.D. 17, 20 (D.D.C. 2009).

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "It is no objection to interrogatories . . . that the information sought is within the knowledge of the interrogating party." Weiss v. Chrysler Motors Corp., 515 F.2d 449, 456 (2d Cir. 1975) (quoting Bowles v. Safeway Stores, 4 F.R.D.

8

469, 470 (W.D. Mo. 1945). Furthermore, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). See also Fed. R. Civ. P. 36(a)(1)(A) (allowing a party to serve a request to admit relating to the facts, the application of law to fact, or any opinions thereon). Rule 33(a)(2) allows a court to delay the response to an interrogatory, however, such delay is completely within the court's discretion. Sheehy v. Ridge Tool Co., 2007 WL 1020742, at *2 (D. Conn. April 2, 2007) (denying plaintiff's request to delay answers until near the close of discovery and ordering service of answers within 15 days).

Answers to interrogatories must be complete and responsive to the questions without referring to other documents "where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." Scaife v. Boenne, 191 F.R.D. 590, 594 (N.D. Ind. 2000) (quotations omitted). Rule 33(d) provides that

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). Rule 33(d) applies "especially to interrogatories which require a

party to engage in burdensome or expensive research into his own business records in order to give an answer." United States v. Kellogg Brown & Root Servs., Inc., --- F.R.D. ---, 2012 WL 3776708, at *6 (D.D.C. Aug. 31, 2012). Rule 33(d) allows the interrogated party "to make the records available and place the burden of research on the party who seeks the information." Id. (quoting Advisory Committee's Notes to 1970 Amendment of Fed. R. Civ. P. 33).

A party that references records when responding to interrogatories must do so with some specificity. Fed. R. Civ. P. 33(d). "It is not sufficient for a responding party to simply direct the interrogating party to a mass of business records." Graske v. Auto-Owners Ins. Co., 647 F. Supp.2d 1105, 1108 (D. Neb. 2009) (finding that a response to interrogatories merely indicating that the 7,000 pages of documents already produced were responsive to each request was insufficient, even though the documents were electronically produced and could be searched by key term, and requiring the defendant to provide more detailed responses). See also Herdlein Techs., Inc v. Century Contractors, Inc., 147 F.R.D. 103, 105 (W.D.N.C. 1993) (requiring interrogated party to either respond to the interrogatory or specify the document where the initial response merely stated that the answer was available in the documents already produced). "An interrogatory answer merely referencing documents is appropriate for 'requests requiring compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents.'" Ayers v. Cont'l Cas. Co., 240 F.R.D. 216, 226 (N.D.W. Va. 2007) (quoting United Oil Co. v. Parts Assocs., Inc., 227 F.R.D. 404, 419 (D. Md. 2005)). Thus, the interrogated party can rely

on Rule 33(d) only upon a showing that it would be burdensome to compile or extract the information beyond what is necessary to sufficiently refer to the records. T.N. Taube Corp. v. Marine Midland Mortg. Corp., 136 F.R.D. 449 (W.D.N.C. 1991) (finding defendant could not invoke the rule because it failed to meet the requirements regarding specificity and burden of ascertaining answers).

The "party resisting discovery has the burden of establishing facts justifying its objection." Davis v. Precoat Metals, 2002 WL 1759828, at *3 (N.D. Ill. 2002); American Needle, Inc. v. New Orleans, 2012 WL 4237395, at *6 (N.D. Ill. Aug. 17, 2012) (declining to find an undue burden exists where the interrogated party failed to detail what the burden would be and requiring the interrogated party to identify documents or categories of documents that would be responsive).

Here, Perdue has produced 44,000 documents as a result of the Trustee's discovery requests. Rather than producing the documents grouped by document request, Purdue grouped them by the individuals who were the sources of the documents, without any indication of the request to which the documents responded. The time and expense repeatedly alleged to have been borne by Perdue has been no more burdensome than parties generally experience during the discovery process. Accordingly, Perdue's responses to the Trustee's document requests fail to sufficiently identify the responsive documents as required by Rule 33(d). Had Purdue provided the documents in response to specific requests rather than in bulk by the individual holding custody of the documents, the answers provided would have properly responded to the Trustee's interrogatories in satisfaction of the Rule 33(d) requirements.

Although not required to do so under these circumstances, the Trustee and her attorneys have reviewed all of the documents to ascertain those that respond to specific interrogatories.[4] The Trustee merely seeks confirmation that the documents do, indeed, respond to the interrogatories. Accordingly, on the facts before the Court, Perdue has failed to sustain its burden of proof in demonstrating that identifying the documents would be overly burdensome to Perdue. In directing Perdue to respond to Interrogatories 1 through 6, the Court is doing no more than ordering Perdue to fulfill the duty that Rule 33(d) requires.

Regarding Perdue's objection that the Trustee's proposed interrogatories relate to matters already known to the Trustee, such an objection may be appropriate when the interrogating party has slept on her rights and simply missed prior opportunities to conduct such discovery in a timely manner. Here, the defects in Perdue's earlier responses overcome this objection, and Perdue will be directed to provide an answer as required by Rule 33(b)(3). Finally, with respect to Perdue's objection that certain interrogatories seek a legal conclusion, Rule 33(a)(2) permits the Trustee to ask such questions. Additionally, the Court notes that the parties are very near to the close of discovery. Accordingly, the Court will direct Perdue to respond to these interrogatories.

B. Bills of Lading

Purdue did not express a willingness to produce the bills of lading until the October 2, 2012 hearing, well after the deadline stated in the Second Amended

---

[4] Had the Trustee moved to compel Perdue to answer her interrogatories prior to her review, the motion would likely have been successful, and Purdue would have been compelled to specifically identify the responsive documents.

Scheduling Order. In fact, prior to the October 2, 2012 hearing, Purdue vehemently opposed undertaking the process of locating the bills of lading. It was not until after the September 12, 2012 hearing, at the deposition of a Purdue employee, that the Trustee discovered Norfolk Southern was an alternate source for the bills of lading. Accordingly, the Court finds that allowing the Trustee to subpoena the bills of lading from Norfolk Southern and to conduct a Rule 30(b)(6) deposition[5] of Norfolk Southern serves the interests of fairness. In the same respect, the Court will order Perdue to produce copies of the bills of lading that it can locate. The Trustee may take a Rule 30(b)(6) deposition of Perdue, but only regarding the bills of lading.

## CONCLUSION

The Court finds good cause to extend the deadlines for discovery. Extending the time for discovery to allow the Trustee to subpoena and depose Norfolk Southern with regard to the bills of lading, to depose Perdue with regard to the bills of lading, and to serve the second discovery request upon Perdue is fair and consistent with the purpose of discovery. The Court will also direct Perdue to produce a legible copy of Exhibit C. Therefore, the Motion is GRANTED.

The Court hereby ORDERS as follows:

1. The Trustee may serve her Second Written Discovery Requests on Perdue by October 12, 2012, and Perdue shall respond by November 13, 2012.

2. The Trustee may serve a subpoena on Norfolk Southern by October 12,

---

[5] Rule 30(b)(6) provides that where a party names a corporation as a deponent, the corporation must designate one or more persons who consent to testify on its behalf. Fed. R. Civ. P. 30(b)(6).

2012 regarding the bills of lading, and Norfolk Southern shall respond by November 13, 2012. Upon the filing of any written objection by Norfolk Southern, the Court will hold an expedited hearing.

3. The Trustee may depose Norfolk Southern pursuant to Rule 30(b)(6) by November 30, 2012, but only with regard to the bills of lading produced by Norfolk Southern. Upon the filing of any written objection by Norfolk Southern, the Court will hold an expedited hearing.

4. Perdue shall produce any bills of lading that Perdue can locate by November 13, 2012.

5. The Trustee may depose Perdue pursuant to Rule 30(b)(6) by November 30, 2012, but only with regard to the bills of lading produced by Perdue or Norfolk Southern.

6. Perdue shall produce a legible copy of Exhibit C by November 13, 2012.

7. The parties shall have to and including December 21, 2012, within which to file dispositive motions and supporting materials, including affidavits and supporting briefs.

8. The final pre-trial disclosures shall be filed with the Court and served on the opposing counsel by January 25, 2013, unless a dispositive motion is filed in which case the final pre-trial disclosures shall be filed within 20 days of the entry of the order ruling on the dispositive motion.

END OF DOCUMENT