SO ORDERED.

SIGNED this 31st day of May, 2013.

THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE



___

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| CLEAN BURN FUELS, LLC, | ) | Case No. 11-80562 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| CLEAN BURN FUELS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 11-09046 |
| | ) | |
| v. | ) | |
| | ) | |
| PURDUE BIOENERGY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the Court is the Motion to Dismiss Case and Motion for Judgment on the Pleadings (the "Motion"), filed by Cape Fear Farm Credit, ACA ("Cape Fear") on January 8, 2013, and the Responses filed by Perdue BioEnergy, LLC ("Perdue") on January 22, 2013 and May 20, 2013, and the trustee for Clean Burn Fuels, LLC (the "Trustee") on May 20, 2013. On March 16, 2013, the Court issued a Memorandum Opinion granting partial summary judgment in

1

favor of the Trustee and denying Perdue's partial summary judgment motion. Following a hearing on May 23, 2013, and upon consideration of the Motion, the Responses thereto, and the arguments of counsel, and for the reasons that follow, the Court will grant the Motion.

## I. FACTS AND PROCEDURAL POSTURE

The facts leading to this adversary proceeding have been extensively detailed in the Court's Memorandum Opinion, dated March 16, 2013, ruling on the partial summary judgment motions (the "Opinion"). As there is no need to reiterate many of those facts, this opinion states only the procedural posture and facts that are relevant to the Motion.

On July 20, 2011, the Debtor filed an Amended Complaint seeking, among other things, a determination that the Debtor owned the corn stored at the Debtor's facility. On August 8, 2011, Cape Fear filed an answer and counterclaim asserting that, should the Court determine that the Debtor owned the corn, Cape Fear held a first priority, perfected lien on the corn. Cape Fear also denied that the Subordination, Attornment and Non-Disturbance Agreement (the "Subordination Agreement") between Perdue and Cape Fear subordinated any of Cape Fear's liens on property owned by the Debtor.

On August 11, 2011, Perdue filed an Answer to the Amended Complaint and a Cross-Claim against Cape Fear, which it subsequently amended on September 1, 2011. The amended Cross-Claim states:

> 101. Based on the foregoing, any rights of Cape Fear in the Perdue Inventory are subordinate and junior to the rights of Perdue, and, as to Perdue, Cape Fear has waived, and should be stopped from taking any action to exercise any asserted rights against the Perdue Inventory or its proceeds to the detriment of the rights and interests of Perdue.
>
> 102. In the event that the Court determines that Cape Fear has an interest in the Perdue Inventory, such interest of Cape Fear is subordinate to the rights and interests of Perdue pursuant to the terms and conditions of the SIDA Agreement, and otherwise.

Thus, Perdue asserts that it owns the corn and that, to the extent that Cape Fear holds an interest in the corn, Cape Fear's interest is subordinate to Perdue's interest pursuant to the Subordination Agreement. On September 19, 2011, Cape Fear filed an answer to the Cross-Claim, conceding that Perdue owned the corn and that, upon a determination that the corn belongs to Perdue, Cape Fear does not hold a lien against the corn. However, Cape Fear continued to deny that the Subordination Agreement subordinated its interest in the Debtor's property to any party.

Also on September 19, 2011, the Court entered an order approving a Settlement Agreement between the Trustee and Cape Fear. The Settlement Agreement allowed Cape Fear relief from the automatic stay with respect to most of its collateral. Additionally, the Debtor surrendered most of the post-petition cash collateral that it had collected. Under the Settlement Agreement, Cape Fear waived any lien or interest it may have had in the corn and the Debtor further agreed to dismiss all claims against Cape Fear with prejudice. With regard to Perdue, the Settlement Agreement explicitly provided that the dismissal of the Debtor's claims would not prejudice Perdue's rights, arguments, causes of actions, claims, or defenses.

On October 17, 2011, the Debtor and Cape Fear filed a Stipulation of Dismissal with Prejudice, dismissing with prejudice the Debtor's claims against Cape Fear and all counterclaims asserted by Cape Fear. The only remaining claim against Cape Fear was Perdue's Cross-Claim. Cape Fear requested that Perdue stipulate to dismissal, but Perdue refused, contending that Cape Fear's prepetition perfected security interest ran contrary to the consignment theory advanced by the Trustee.

Consequently, on January 8, 2013, Cape Fear filed the Motion. Cape Fear asserts that the Settlement Agreement rendered this adversary proceeding a dispute between only the Debtor and

3

Perdue. Cape Fear seeks dismissal from the adversary proceeding to avoid the expense associated with trial and the entry of an improper and unnecessary judgment against it.

In the Motion, Cape Fear sets forth three arguments in support of its dismissal from this adversary proceeding. First, Cape Fear asserts that no justiciable controversy exists between the parties because Cape Fear has no interest in the corn that could be subject to subordination. Second, pursuant to Federal Rule of Civil Procedure 19(a)(1), Cape Fear is not a necessary party to the action and complete relief can be afforded between the Debtor and Perdue without Cape Fear's presence. Third, the plain language of the Subordination Agreement does not provide for the subordination of Cape Fear's rights in any assets of the Debtor, but instead subordinates Perdue's lease rights to Cape Fear's lien on the Debtor's real property.

In Perdue's Response to the Motion, Perdue argues that the Cross-Claim relates to and preserves any equitable subrogation arguments Perdue may assert. Perdue also restates its opposition to the Settlement Agreement based on its potential adverse effect on Perdue's claims, while noting that the Settlement Agreement specifically provided that it would not adversely affect Perdue's rights. Perdue asserts that the Cross-Claim relates to a determination of Cape Fear's perfected security interest, which ultimately benefits Perdue and therefore, a justiciable controversy exists between Perdue and Cape Fear. Perdue also argues that the effect of the Subordination Agreement on Cape Fear's rights in the corn is not ripe for decision upon judgment on the pleadings because a review of the complete set of documents executed in connection with the Subordination Agreement is necessary for such a determination.

On May 20, 2013, following the entry of the Opinion, which granted summary judgment for the Trustee on multiple counts and included a finding that the corn was property of the estate, both Perdue and the Trustee filed briefs regarding the Motion. Perdue's brief indicates an intent

to appeal the summary judgment order and a desire to preserve all of its rights set forth in its Cross-Claim. Perdue's brief reiterates the arguments that it made in response to the Motion and further asserts that Cape Fear's desire to avoid participation in the litigation is not a legal basis for determining that its presence is not necessary.

The Trustee argues that Cape Fear does not assert an interest in the corn, so there is no controversy between Cape Fear and Perdue. The Trustee notes that in Perdue's Cross-Claim, Perdue failed to use the word "subrogation" or any similar term, and the Cross-Claim fails to request relief that would entitle to Perdue to stand in the shoes of Cape Fear. The Trustee further notes that any claim of interest in the corn based on a theory of subrogation should be asserted against the estate rather than Cape Fear. The Trustee also points out that the Court addressed the possibility of a subrogation argument, and its ultimate failure, in a footnote in the Memorandum Opinion.

## II. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (K), and (O), which this Court has the jurisdiction to hear and determine. Pursuant to the analysis in Stern v. Marshall, 564 U.S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

## III. STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion is well known; to survive such a motion, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" Wahi v.

5

Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 n. 26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A complaint is facially plausible if it pleads factual allegations that would allow the court to reasonably infer the plaintiff's entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Twombly, 550 U.S. at 556. In order for a federal court to hear a claim for declaratory relief, the complaint must first "allege[] an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir 2004). Thus, where "the complaint does not allege an actual, genuine existing controversy, a motion for dismissal under ... Rule 12(b)(6) will be granted." S. Concrete Prods., Inc. v. ARCO Design/Build, Inc., 2012 WL 1067906, at *4 (W.D.N.C. Mar. 29, 2012) (quoting Gaston Bd. of Realtors, Inc. v. Harrison, 311 N.C. 230, 234-35, 316 S.E.2d 59, 61 (1984)).

## IV. ANALYSIS

The Motion will be granted for two reasons.

### A.  Cape Fear is Not a Necessary Party to This Litigation

Federal Rule of Civil Procedure 19(a) provides that a person must be joined as a party to an action if

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>   (i)   as a practical matter impair or impede the person's ability to protect the interest".

Fed. R. Civ. P. 19(a).

Perdue correctly argues that the Settlement Agreement does not affect it's rights. The Settlement Agreement explicitly states that Cape Fear no longer asserts any interest in the corn and, despite Perdue's protests, all parties acknowledge the provisions of the Settlement

6

Agreement.  Perdue asserts that Cape Fear's perfected security interest in the corn is an essential element of its claims, but Cape Fear agrees that it had a perfected security interest. This hardly creates any controversy between them.  Thus, Cape Fear need not be a party to this action for Perdue to argue that Cape Fear's interest in the corn is subordinate to Perdue's, and the Court can afford complete relief to both the Debtor and Perdue without the presence of Cape Fear. Accordingly, the Court concludes that no dispute remains between Cape Fear and Perdue that would affect the rights of either party.

### B.  The Cross-Claim Fails to State a Claim Against Cape Fear Upon Which Relief May Be Granted

Perdue's Cross-Claim asserts that the interest of Cape Fear in the corn "is subordinate to the rights and interests of Perdue pursuant to the terms and conditions of the [Subordination] Agreement."  The Subordination Agreement provides that Perdue's lease of the corn bins is subordinate to Cape Fear's deed of trust on the Debtor's real property, but Cape Fear acknowledges that Perdue "retains ownership" of the corn prior to the point of transfer defined in the Lease.  Subordination Agreement, § 1.  It also provides that any foreclosure on the Debtor's real property by Cape Fear will not interfere with Perdue's right to remove the corn under the Lease.  Subordination Agreement, § 3.  It is important to recognize what the Subordination Agreement does and what it does not do.   The Subordination does not subordinate Cape Fear's security interest in the corn to the interests of Perdue or anyone else.[1]

Furthermore, the Cross-Claim seeks a determination of a subordination of rights, not a subrogation of rights. It does not even contain the word "subrogation."  Perdue first raised the

---

[1] At the hearing on the summary judgment motions, the Court invited counsel for Perdue to identify the language in the Subordination Agreement that subordinates the security interest of Cape Fear in the corn, but no such language was identified.

7

notion of equitable subrogation in its Response to the Motion and again at oral argument on the partial summary judgment motions. Even had Perdue plead a claim for subrogation, the Subordination Agreement provides no right to contractual subrogation, and there is no justification for a claim of equitable subrogation. Moreover, as the Trustee correctly noted, any claim of interest in the corn based on a theory of subrogation should be asserted against the estate rather than Cape Fear.

As explained in the Memorandum Opinion, there is nothing in the record to support an argument that Perdue may stand in the shoes of Cape Fear. Accordingly, the Cross-Claim is not plausible, and there is no logical reason for Cape Fear to remain in this adversary proceeding. To the contrary, there are practical reasons to excuse Cape Fear: the additional time and expense associated with Cape Fear's involvement would constitute an unnecessary burden on the Court and all parties.

## V. CONCLUSION

Although Cape Fear has waived any interest in the corn, this fact does not prevent Perdue from arguing that Cape Fear's interest in the corn is subordinate to Perdue's. At the same time, Cape Fear need not be a party to this action for Perdue to make that argument. Accordingly, Cape Fear is not a necessary party under Federal Rule of Civil Procedure 19(a). Moreover, the Cross-Claim does not state a claim against Cape Fear. Perdue has no basis to assert a claim against Cape Fear for subordination or subrogation, equitable or otherwise. Therefore the Motion will be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Rule 9021.

END OF DOCUMENT